

# FILED

DEC 1 2 2007 

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISCTRICT OF ILLINOIS**
**EASTERN DIVISION**



| | |
|---|---|
| JERRY CZAJKOWSKI, Ph.D., an individual,<br>Plaintiff,<br><br>v.<br><br>REED ELSEVIER, INC., a Massachusetts<br>Corporation, and DOES 1-20, inclusive,<br>Defendants. | 07CV 6971<br>JUDGE SHADUR<br>MAGISTRATE JUDGE DENLOW<br><br><br><br>**BREACH OF CONTRACT**<br>Jury Trial Demanded |

## COMPLAINT FOR DAMAGES

1.    The complainant JERRY CZAJKOWSKI, complains against Defendants REED

ELSEVIER, INC. (a.k.a., ELSEVIER, INC., Harcourt Brace Jovanovich Inc., Harcourt General

Inc.), and DOES 1-20 (collectively "Defendants") as follows:

### DIVERSITY JURISDICTION AND VENUE

2.    Proper venue and jurisdiction for this action, pursuant to 28 U.S.C. § 1332 and 28 U.S.C.

§ 1391, lies with the United States District Court, Northern District of Illinois. The amount in

controversy exceeds the sum and value of $75,000, exclusive of interest and costs.

3.    Because the majority of Defendants' wrongful acts had occurred in the States of New

York, Delaware, Massachusetts, Florida and California, and because of a 7 year litigation against

HBJ in the Federal Courts of California, Plaintiff, believes that he can not get a fair trial in those

States. Therefore, the Plaintiff chose under the Diversity Jurisdiction, as the proper Venue the

United States District Court, Northern District of Illinois, for Defendants maintain a Division in

the State of Illinois, as well.

### THE PARTIES

4.    Plaintiff has, and at all times mentioned herein, been an individual residing in San Diego

County, California.

1

5.    Defendants have, and at all times mentioned herein, been a New York, Delaware and now a Massachusetts corporation doing business in the United States and worldwide.

6.    Plaintiff does not know the true names or legal capacities of the Defendants sued herein as DOES 1-20, inclusive, and therefore sues said Defendants by such fictitious names.

7.    Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as DOES 1-20 is legally responsible in some manner for the matters herein alleged, and is legally responsible in some manner for causing the injuries to Plaintiff as hereinafter alleged.

8.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times herein, Defendants, and each of them, were the employees, representatives, managing agents and/or authorized agents of the other Defendants. In performing the acts alleged herein, Defendants, and each of them, were acting within the course and scope of their employment, representation and/or agency and with the consent and/or authority of the other Defendants. Further, Defendants, and each of them, at all relevant times herein, ratified and affirmed the acts of the remaining Defendants.

## NEW YORK LAW

9.    The issues presented to this Court are governed by New York law since Harcourt Brace Jovanovich (HBJ) was a New York Corporation. See *Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130 (1933)*; Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.1985) (stating that "*[c]laims involving the 'internal affairs' of corporations ... are subject to the laws of the state of incorporation*").

10.    Noncompliance of HBJ with the New York Business Corporation Law (**NY BCL**) during its 1991 merger with General Cinema Corporation (GCC), has led to a major deviation from the statutory handling of the attempted 1991 redemption of one of its debt securities, the 12% Preferred Stock, to a detriment of its dissenting shareholders and their *vested property rights* protected by the United States Constitution. This attempted 1991 redemption was not done in compliance with the NY BCL § 623(j), § 514(a)(b), nor § 906(b)(2)(3).

11.    The NY BCL § 623(j) "***Procedure to enforce shareholder's right to receive payment for shares***" states:
"*No payment shall be made to a dissenting shareholder under this section at a time when the*

2

corporation is insolvent or when such payment would make it insolvent. In such event, the dissenting shareholder shall, at his option: ... (2) Retain his status as a claimant against the corporation ... and if it is not liquidated, retain his right to be paid for his shares, which right the corporation shall be obliged to satisfy when the restrictions of this paragraph do not apply."

12.    The NY BCL § 514(a)(b) *"Agreements for purchase by a corporation of its own shares"*, states:

*"(a) An agreement for the purchase by a corporation of its own shares shall be enforceable by the shareholder and the corporation to the extent such purchase is permitted at the time of purchase by section 513 (Purchase or redemption by a corporation of its own shares). (b) The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, if at the time for performance the corporation can purchase all or part of such shares under section 513."*

13.    The NY BCL § 906(b)(2)(3) *"Effect of merger or consolidation"*, states:

*"(b) When such merger or consolidation has been effected: (2) All the property, real and personal, including subscriptions to shares, causes of action and every other asset of each of the constituent entities, shall vest in such surviving or consolidated corporation without further act or deed. (3) The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent entities. No liability or obligation due or to become due, claim or demand for any cause existing against any such constituent entity, or any shareholder, member, officer or director thereof, shall be released or impaired by such merger or consolidation. No action or proceeding, whether civil or criminal, then pending by or against any such constituent entity, or any shareholder, member, officer or director thereof, shall abate or be discontinued by such merger or consolidation, but may be enforced, prosecuted, settled or compromised as if such merger or consolidation had not occurred, or such surviving or consolidated corporation may be substituted in such action or special proceeding in place of any constituent entity."*

14.    The NY BCL § 623(e) *"Procedure to enforce shareholder's right to receive payment for shares"*, states:

*(e) Upon consummation of the corporate action, the shareholder shall cease to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under this section. A notice of election may be withdrawn by the shareholder at any time prior to his acceptance in writing of an offer made by the corporation, as provided in paragraph (g), ...In order to be effective, withdrawal of a notice of election must be accompanied by the return to the corporation of any advance payment made to the shareholder as provided in (g)."*

## CONSTITUTIONALLY PROTECTED *VESTED PROPERTY RIGHTS* AND THE REDEMPTION RIGHTS

15.    The HBJ 12% Preferred Stock issued in 1987 has possessed *vested property rights* and *redemption rights* protected by the United States Constitution and other statutes:

16.    *"The right of a preferred stockholder to have his stock redeemed on the certain date*

3

*specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent."* (<u>Weckler v. Valley City</u> 93 F.Supp.451.Affirmed, 188 F.2d 367)

17.    *"the Supreme Court further stated,... 'It seems clear that the redemption right of plaintiff as a preferred stockholder is something more and different in character than an ordinary incidental right of a stockholder, such as voting for the election of a director of the company, and that his right is contractual in nature. This contract right was presumably a condition precedent to plaintiff's determination to purchase preferred stock in the defendant company. The redemption provision was a definite undertaking on the part of the defendant corporation to redeem at a given time and on given terms the stock plaintiff agreed to purchase. Assuming, as we fairly may, that in the absence of the redemption provision plaintiff would not have purchased his stock, or that defendant's undertaking to redeem was an inducing cause in consequence of which plaintiff did purchase, the provision for redemption was something more than a mere incident to corporate relationship, it was a definite contractual undertaking, the proposal for which antedated and consummation of which coincided with the purchase of the stock by plaintiff, who prior to that time was not identified with the corporation.'"* (p.452 <u>Weckler v. Valley City</u>, id.)

18.    *"Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract and as divesting stockholder of vested interest in corporation without due process of law,...Const. art. 8, § 1; Const. U.S. Amend. 14; Const. U.S. art. 1, § 10".(<u>Breslav v. New York & Queens Electric Light & Power Co.</u>, 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708)*

19.    *"Power reserved in state to amend corporation's charter is not unlimited, and its exercise is subject to restrictions imposed by other provisions of State and Federal Constitutions, such as requirement of due process, and vested property rights and obligations of contract must not be destroyed or impaired (Const. art.8, § 1; General Corporation Law, § 5; Const. U.S. Amend.14; Const. U.S. art.1, § 10.)"(<u>Breslav v. NY & Queens Electric Light & Power Co.</u>, id.)*

20.    *"Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest which may not be divested without stockholder's assent, and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares." (<u>Breslav v. NY & Queens Electric Light & Power Co.</u>, id.)*

21.    *"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed by changing noncallable stock into callable stock by vote of two-thirds of stockholders."(<u>Breslav v. NY & Queens Electric Light & Power Co.</u>, id.)*

## GENERAL ALLEGATIONS

### 12% Preferred Issued in 1987

22.    In 1987 the HBJ was faced with a hostile takeover by the British Printing and Communication Corporation, which was offering $44 per share common to HBJ shareholders.

To avoid this hostile takeover, in May 1987, HBJ's Board of Directors adopted a recapitalization plan ("1987 Recapitalization"), consisting of payment of special dividends worth $53.50/share to majority shareholders consisting of $40 in cash and issuance of free 12% Preferred notes valued "at any time" at $13.50/share, to those shareholders. (Arthur Andersen "Notes", p. F-13 of the 1991 Merger Prospectus).

23.    The 1987 Recapitalization was given to common shareholders and convertible debentures holders, and financed by loans and sales of stock. ("Notes", p.F-13), The 12% Preferred closed on the New York Stock Exchange at $10.88 per share on its first day of issuance and reached $12.25 per share in 1989.

24.    In May 1987, HBJ repurchased some of its common stock and convertible debentures, and in 1988 converted (via redemption) all the preferred stocks it sold to institutional investors into bonds and debentures, in the process, excluding from redemption the 12% Preferred ("Notes", p.F-13).

**"Agreements for Purchase by a Corporation of Its Own Shares" per NY BCL § 514(a)(b)**

25.    The detailed description of the HBJ's 12% Preferred agreement for purchase of its own shares (per NY BCL § 514(a)(b)), listed in the 1991 HBJ-GCC Merger Prospectus promised that:

*"HBJ may, at its option, redeem shares of HBJ Preferred Stock in whole at any time, or from time to time in part, at a redemption price equal to the $13.50 per share liquidation preference plus accrued and unpaid dividends, if any, to the date fixed for redemption. HBJ is required to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of HBJ Preferred Stock then outstanding and on June 30, 2007 all remaining shares of outstanding HBJ Preferred Stock, in each case at the redemption price of $13.50 per share, plus accrued and unpaid dividends, if any, to the date of redemption."* (Merger Prospectus, p.133).

26.    In 1998, HBJ's Expert Witness, Dr. Paul Pfleiderer opined that this agreement (the redemption clause) of the 12% Preferred was not triggered by the 1991 merger because HBJ had not invoked its option to redeem, and because the 12% Preferred must be outstanding in 2003, which in 1991 was still 12 years away.

*"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have effect:*

*a). HBJ must invoke its option to redeem the preferred shares, or*

*b). HBJ preferred shares must be outstanding in the year 2003.*

5

*Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered was a fair price". (Dr.P.Pfleiderer, HBJ's Expert Witness, 4/03/98, Exh.3)*

27.     Since Plaintiff's 12% Preferred is still outstanding, it should have triggered now the mandatory 2003-2007 redemption clause.

### 1991 HBJ Merger with the General Cinema Corporation

28.     In 1991, as a result of HBJ's self-induced and highly leveraged financial position, HBJ entered into a merger agreement with General Cinema Corporation (GCC) ("Notes", p.F-14). It merged with GCC forming Harcourt General Inc. in violation of full disclosure requirements.

29.     During this merger HBJ did not inform its shareholders that under the NY BCL § 906 (b)(3), the new corporation must inherit all its debts and liabilities and that the 12% Preferred is a debt and a liability. HBJ only referred its stockholders to read about their rights in the Appendix D to the Merger Prospectus, on 12/09/91 writing: *For further information regarding your rights as a dissenting shareholder, and the procedures to be followed to perfect those rights, please refer to the Joint Proxy Statement/Prospectus dated October 25, 91."*

30.     In this reference (App. D), HBJ just listed § 623 and § 910 of the NY BCL. These Sections describe only two rights available to the dissenting shareholders, namely those of (1) appraisal, and (2) cash or share exchange, omitting the third option, wherein a given debt security or liability possesses *vested property rights*, i.e., contractual mandatory redemption date and value. This future debt or liability according to the NY BCL § 906 (b)(3) and § 514(a)(b), cannot be extinguished by the merger or an appraisal, for it has to be taken over by the parent corporation.

31.     Thus to the dissenters the <u>undisclosed</u> NY BCL § 906 (b)(3), and § 514(a)(b), were the third option, as it exempts any debt or a liability, such as the 12% Preferred from an appraisal (*"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed ... " <u>Breslav v. New York & Queens Electric Light & Power Co, id.</u>*), and it requires redemption when due:

*"The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. No liability or obligation due or to become due, claim or demand for any cause existing against any such corporation, or any member, officer or director thereof, shall be released or impaired by such merger or*

consolidation. " (NY BCL § 906 (b)(3)) and,

*"(a) An agreement for the purchase by a corporation of its own shares shall be enforceable by the shareholder and the corporation ...The possibility that a corporation may not be able to purchase its shares under section 513 shall not be a ground for denying to either party specific performance of an agreement for the purchase by a corporation of its own shares, if at the time for performance the corporation can purchase all or part of such shares under section 513. "*
(NY BCL § 514(a)(b)).

32.    In 1991 the Plaintiffs informed by HBJ only about NY BCL § 623 and § 910, dissented from the merger.

33.    In 1991 HBJ intentionally did not disclose to any of the dissenters their third option, i.e., to wait until the year 2003 for the mandatory redemption prescribed by the NY BCL § 906(b)(3), § 514(a)(b) and § 623(j). HBJ only extended an offer to purchase dissenters' Loan Certificates as Stock Certificates per NY BCL § 623, which is *exclusive* only to non-debt and non-liability securities.

34.    Thus to the Plaintiffs HBJ also made an 80% cash advance of the full $3,507.27 merger consideration (69¢/share), requesting voluntary surrender of the Certificate in exchange for the remaining 20% payment, and informing that by accepting $2,810.90 the Plaintiffs will not be giving up any dissenters' rights.

35.    Although, this move was in compliance with the NY BCL § 623 (g), i.e., *"Every advance payment ... will include advice to such holder that acceptance of such advance payment by a dissenting holder will not constitute a waiver of such holder's dissenter's rights... "*, it was not in compliance with the relevant NY BCL § 906(b)(3), § 514(a)(b) nor § 623(j).

36.    The Plaintiffs rejected HBJ's $3,507.27 offer, and made a $65,809.60 Counteroffer, demanding the promised *liquidation preference* of the 12% Preferred, for *"at any time"* at the option of the company or *"in the event of any liquidation, dissolution or winding-up of HBJ, HBJ Preferred Stock has a liquidation preference of $13.50 (per share), plus any accrued and unpaid dividends to the liquidation date"* . HBJ ignored this $65,809.60 Counteroffer.

37.    In February 1992 Plaintiffs sued HBJ in the Southern District of California's Federal Court for breach of the *"liquidation preference"* promise.

38.    In effect, contrary to the requirements of the NY BCL § 623(e) and § 623(g):

7

*(e) "In order to be effective, withdrawal of a notice of election to dissent must be accompanied by the return to the corporation of any advance payment made to the shareholder... (g) If..., the corporation making the offer and any shareholder agree upon the price to be paid for his shares, payment therefor shall be made ..., upon the surrender of the certificates for any such shares represented by certificates."*

Plaintiffs never returned to the corporation the advance payment, never agreed to the redemption price of the Certificate, and never surrendered it, so the surviving Plaintiff per NY BCL § 623(j) retains his status as a claimant against the corporation, and the HBJ's 2003-2007 debt obligation according to the NY BCL§ 906 (b)(3) and § 514 (a)(b), is actual until it is fully satisfied.

### 12% Preferred Characterized as a Liability

39.    HBJ's 12% Preferred was a liability possessing *"vested property rights"* protected by the United States Constitution and other statutes, stemming from its mandatory redemption in 20% increments over the 5 years commencing on June 30, 2003 at $13.50/share plus accumulated 12%/yr dividends.

40.    The following excerpts from the audit done by Arthur Andersen and Company (published in the 1991 Merger Prospectus), identify and clarify the characterization of the 12% Preferred as being truly a debt and a liability to HBJ:

41.    The 12% Preferred is a debt with mandatory redemption provision, possessing a redemption face value of $13.50 per share, with a mandatory maturity date, redeemable in full, beginning June 30, 2003 in 20% level increments over 5 years ("Notes" p.F-21, and 1989 Moody's Industrial Manual, p.1288)

42.    When declared, quarterly dividends were authorized to be issued in shares of additional 12% Preferred (Pay-In-Kind until 6/30/93), always paid at a fixed 12% per year of the $13.50/share liquidation preference or $1.62/share/year. Such that, if the market value of the 12% Preferred in a given year was $1.62, the yearly dividend would amount exactly to just one share, or a 100% return per year ("Notes" p.F-21). Last dividend distribution was made on 12/31/90. In early 1991 HBJ Board due to a low market value of the 12% Preferred stopped issuing Pay-In-Kind dividends. (p.F-38).

43.    For the purpose of Pay-In-Kind quarterly dividend calculation (paid in additional shares of the 12% Preferred), before these dividends were calculated and issued, the 12% Preferred was recorded at the market value ("Notes" p.F-21), so that the quarterly dividend of $0.405/share

8

(3% of $13.50) could be properly converted to the x number of newly issued shares at the market value. For example, if the market value of the 12% Preferred at the end of a quarter was $0.405/share, HBJ would issue just one share of 12% Preferred as the quarterly Pay-in-Kind dividend (a 100% return per quarter).

44.     Unpaid and undeclared dividends were authorized to accumulate on the 12% Preferred,

*"**Redeemable 12% Preferred Stock**: The terms of the 12% Preferred Stock provide for quarterly dividends as and when declared by the Board of Directors at the rate of 12% of their liquidation preference per year, which dividends through the dividend period ending 6/30/93 may be paid in additional shares of 12% Preferred. In early 1991, the Board of Directors voted to omit the pay-in-kind dividend for the quarter ending 3/31/91 ... Although the HBJ has no legal obligation to pay dividends on the 12% Preferred, unpaid dividends accumulate..."* ("Notes" p.F-21)

45.     12% Preferred is classified outside the shareholders' equity,

*"**Shareholders' Equity**: The only outstanding shares of HBJ capital stock are its common stock and its 12% Preferred Stock. The 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity."* ("Notes" p.F-22)

46.     Redeemable 12% Preferred is listed as a liability on financial statements ("Notes" p.F-5).

47.     In 1998, HBJ's Financial Expert Witness, P.Pfleiderer, Ph.D., also concluded that the 12% Preferred is a liability due in 2003. (Exh.3)

*"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have effect:*

*a. HBJ must invoke its option to redeem the preferred shares, or*

*b. HBJ preferred shares must be outstanding in the year 2003.*

*Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered was a fair price".* (HBJ's Expert Witness, 4/03/98, Exh.3)

48.     Thus, it is clear that the issuance of the 12% Preferred, initially used to thwart the hostile takeover by the British Printing and Communication Corporation, were actually loans, key instruments in the long term debt financing, the effect of which was to put the holders of the 12% Preferred in the position of lenders.

### 12% Preferred a Debt Security

49.     To help finance HBJ's 1987 Recapitalization, Plaintiffs loaned money to HBJ at 12% per year via their purchase of the 12% Preferred. Plaintiffs paid for the **Debt Security**, in its full statutory meaning -

*"[a]n obligation of an issuer, or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer that is all of the following:*

*(a) It is represented by a security certificate in bearer or registered form, or the transfer of it may be registered upon books maintained for that purpose by or on behalf of the issuer.*

*(b)    It is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations.*

*(c)    It is either of the following:*

      *a.  It is, or is of a type, dealt in or traded on securities exchanges or securities markets.*

      *b.  It is a medium for investment and by its terms expressly provides that it is a security governed by this division".* CA Comm.'l Code §8102(15).

50.    The Plaintiff purchased a debt security which was identified as 12% Preferred, because the Board of Directors would declare dividends (pay interest) at the annual rate of 12% of the liquidation preference and redemption value of $13.50 per share which "HBJ is required to redeem ..." (Merger Prospectus of 10/25/91 at p.133).

51.    Dividends will accrue, even if not paid, just as interest compounds on a loan (Merger Prospectus of 10/25/91 at p.133 and F-21).

52.    The 06/30/2003 and subsequent installment redemptions through 06/30/2007, are mandatory payments, just as a note would be callable by the holder. *"The 12% Preferred Stock is mandatorily redeemable and as such is classified outside of shareholders' equity".* (Andersen & Company notes to consolidated financial statements, p. F-22 of the 10/25/91 Merger Prospectus).

53.    1989 Moody's Industrial Manual publication on p.1288 also described the 12% Preferred as a debt security, informing:

**DIVIDEND RIGHTS** *- Cumulative dividends are payable quarterly on these shares from the issuance date, July 27, 1987, at the rate of 12% of their liquidation preference per year. Through June 30, 1993, dividends will be paid in additional shares of 12% Preferred Stock. Paid in stock equivalent to $0.405.*

**CALLABLE** *– Company is required to redeem, in full in level increments over 5 years commencing June 30, 2003.*

54.    Had the Plaintiffs not purchased a debt security, clearly it would have no liquidation preference, there would not be cumulative interest rate of 12% ("dividends"), there would not be stated redemption payment period, and there would be no stated amount of redemption. Plaintiffs' purchase was that of a debt security. Plaintiffs' investment is secured by the liquidation preference of the contractual agreement.

55.    Indeed, the debt security is a contractual obligation which cannot be impaired without the

breach thereof. Plaintiffs' right to redemption at the time and in the amount stated by HBJ is a Contract. For HBJ to refuse to honor its contractual obligation is an impairment of Plaintiff's contract rights and a deprivation of *vested property rights*.

## Ownership of 12% Preferred

56.     The Plaintiff Jerry Czajkowski and his mother Lonia Czajkowski, purchased various shares of 12% Preferred from HBJ between 10/08/89 and 5/10/90, upon which accrued dividends on 12/30/90, resulted in the total ownership of 5,083 shares. They purchased these shares of 12% Preferred as a Debt and a Liability of HBJ, based on the promise of the mandatory 6/30/2003 - 6/30/2007 redemption plus accumulated 12% dividends, as it was described and published in the 1989 Moody's Industrial Manual, p.1288 (Exh.2).

57.     The Plaintiff after death of his mother Lonia Czajkowski (August 4th 2005), became the beneficial owner of 5083 outstanding shares of the 12% Preferred, and according to the 1992-2001 Harcourt General's dividend tax records (Forms-1099-DIV), he is also an owner of 200 shares of Harcourt General's common stock plus unpaid (though reported to the IRS) dividends of $1,330.

58.     On 11/01/91 Plaintiff and Lonia Czajkowski, submitted a Notice of Election to Dissent to HBJ's merger with GCC, demanding payment for their shares.

59.     Thereafter, HBJ issued a Dissenter's Stock Certificate to Plaintiff, showing his ownership of 5,083 shares of 12% Preferred, the original certificate of which is in his possession, a copy thereof is attached as Exh.1.

60.     On 11/21/91, HBJ issued a payment to Plaintiff of $2,810.90 as a partial statutory 80% offer to pay for shares of merger dissenters. The transmittal by HBJ was accompanied by the advice that acceptance of the payment did not waive any dissenters' rights and directed Plaintiff to refer to the 10/25/91 Joint Proxy Prospectus ("Merger Prospectus").

61.     On 12/20/91 the Plaintiff and his mother rejected the offer, bringing to HBJ's attention that the Merger Prospectus stated, that the 12% Preferred required payment in full of $13.50/share upon liquidation, dissolution or winding up of HBJ. In reliance on the provisos of the Merger Prospectus, the Plaintiff and his mother made a counteroffer to HBJ for the balance at the face value of $13.50 per share (less the prepayment), in the amount of $65,809.60.

11

### Federal Litigation (1992-1999)

62.     HBJ did not respond to Plaintiffs' reasonable 1991 counteroffer to settle for $13.50 per share. What followed was lengthy and protracted litigation in the Southern District of California's Federal Court. That litigation was resolved as an action for *appraisal* of the 12% Preferred (Exhs.4 and 5).

63.     Based on the Plaintiffs' *"liquidation preference"* cause of action, in 1994 the 9th Circuit Court of Appeals concluded that there was no liquidation of HBJ in 1991, and so the *"exclusive remedy"* of the 12% Preferred Stock in 1991 was an *appraisal*, and issued a remand giving the Plaintiffs leave to amend their 1992 Complaint with an *appraisal* (Exh.4).

64.     In 1998 an appraisal proceeding in the District Court was halted by granting Defendants' Motion for Summary Judgment based on the Expert Witness discovery, that at the time of the 1991 merger, HBJ's 69 cent offer was a fair market value of the 12% Preferred.

65.     However, the 1998 final order granting Defendants Motion for Summary Judgment, did not order the Plaintiffs to surrender and sell the Loan Certificate for 69¢/share. It only affirmed HBJ's 1992 contention, that at the time of the 1991 merger, the 69¢/share was a *"fair price"*, and if Plaintiffs should agree to sell (since there was no liquidation of HBJ), HBJ did not have to offer them more than 69¢/share.

66.     Because the redemption of the 12% Preferred at $0.69/share in 1991was not mandatory, Plaintiffs' *vested property rights* were not destroyed by the merger, and Plaintiffs could not invoke the constitutional protection as in *Breslav v. New York & Queens Electric Light & Power Co, id.,* where it is stated that the *"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed..."*

67.     The same conclusion was reached by the HBJ's Expert Witness, Dr.P.Pfleiderer, who wrote in support of the Motion for Summary Judgment (Exh.3):

*"The clause (the HBJ redemption clause) was never triggered. Specifically, for this clause to have effect:*

> *a). HBJ must invoke its option to redeem the preferred shares, or*
>
> *b). HBJ preferred shares must be outstanding in the year 2003.*

*Because **neither of these events took place**, this clause has no bearing on my opinion that the price offered was a fair price".* (Dr.P.Pfleiderer, HBJ's Expert Witness, 4/03/98).

12

68.    Plaintiff's claim is based today on the failure of the HBJ to comply with the NY BCL §
514(a)(b) and pay the face value of the 12% Preferred as a liability in 2003-2007 which had not
accrued at any time during the federal litigation and therefore cannot preclude an action for
breach of contract today.

### *"Exclusive Remedy"* of Appraisal per NY BCL § 906(b)(3) and § 514(a)(b) is Not *"Exclusive"*, and Does Not Destroy Redemption Rights or Vested Property Rights (*Weckler v. Valley City, id.*)

69.    *"Exclusive Remedy"* of appraisal per NY BCL § 623(e) can not and does not nullify any
contractual obligations such as *vested property rights* protected by the NY BCL § 906 (b)(3), §
514(a)(b) and the United States Constitution.

70.    In 1950 the meaning and applicability of the term *"exclusive remedy"* has been explained
by Judge Starr of the United States District Court W.D. Michigan S.D., as follows:

*"Objection by any such shareholder to any action of the corporation provided in this section and his rights thereafter under this section shall be his* **exclusive remedy** *."*

*The above-quoted §§ 44 and 57 of the General Corporation Act should be considered and construed in connection with §§ 59 and 192 of the act. When so considered, it would appear that in using the term "exclusive remedy" in § 44 the legislature simply meant that a minority stockholder who "voted against" a proposed good-faith sale of corporate assets could no longer, as he could in the past, prevent or block the sale against the wishes of a majority of stockholders, and that if he voted against the sale, he could only demand that the corporation purchase his stock and pay to him the fair cash value thereof. Such an interpretation of § 44 would appear to be in harmony with the purpose of this and similar statues which where enacted to permit a majority of stockholders to authorize a good-faith sale, lease, or exchange of corporate assets and a fundamental change in the corporate structure without victimizing the minority stockholders, and yet at the same time prevent a minority stockholder from establishing a nuisance value for his shares. An interpretation of § § 44 and 57 to permit the change or destruction of redemption rights or other vested property rights would certainly be in conflict with § 59 of the act, which provides that "The liability of any corporation * * * shall not in any way be lessened or impaired by the sale of any assets thereof," and in conflict with § 192 of the act, which provides that "This act shall not impair or affect any * * * right accruing, accrued, or acquired, or liability * * * incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if this act had not been passed." It should be noted that § 192 preserves not only accrued rights, but also the remedies for preserving such rights, for it specifically states that they may be asserted, enforced, and prosecuted as if the act had not been passed." (p.455,* Weckler v. Valley City *93 F.Supp.451.Affirmed, 188 F.2d 367)*

### *"Exclusive Remedy"* of Appraisal Does Not Apply to Preferred Stocks
### which Possess *Vested Property Rights*

71.    Furthermore:

*"The right of a preferred stockholder to have his stock redeemed on the certain date specified in the stock certificate was a vested property right of a contractual nature, and that a corporation could not, through action by a majority of its stockholders, deprive a minority preferred stockholder of this redemption right without his consent."* (Weckler v. Valley City 93 F.Supp.451.Affirmed, 188 F.2d 367)

72.    Moreover, *"the Supreme Court further stated,... 'It seems clear that the redemption right of plaintiff as a preferred stockholder is something more and different in character than an ordinary incidental right of a stockholder, such as voting for the election of a director of the company, and that his right is contractual in nature. This contract right was presumably a condition precedent to plaintiff's determination to purchase preferred stock in the defendant company. The redemption provision was a definite undertaking on the part of the defendant corporation to redeem at a given time and on given terms the stock plaintiff agreed to purchase. Assuming, as we fairly may, that in the absence of the redemption provision plaintiff would not have purchased his stock, or that defendant's undertaking to redeem was an inducing cause in consequence of which plaintiff did purchase, the provision for redemption was something more than a mere incident to corporate relationship, it was a definite contractual undertaking, the proposal for which antedated and consummation of which coincided with the purchase of the stock by plaintiff, who prior to that time was not identified with the corporation.'"* (p.452 Weckler v. Valley City, id.)

73.    The case law of *Breslav v. New York & Queens Electric Light & Power Co., 291 NYS 932, 249 App.Div.181, affirmed 273 NY 593, 7 NE2d 708,* confirms the same:

74.    *"Statute, if construed as impliedly authorizing making of noncallable stock callable by vote of two-thirds of outstanding shares, would violate Federal Constitution as impairing obligation of contract and as divesting stockholder of vested interest in corporation without due process of law,...Const. art. 8, § 1; Const. U.S. Amend. 14; Const. U.S. art. 1, § 10".*

75.    *"Power reserved in state to amend corporation's charter is not unlimited, and its exercise is subject to restrictions imposed by other provisions of State and Federal Constitutions, such as requirement of due process, and vested property rights and obligations of contract must not be destroyed or impaired (Const. art.8, § 1; General Corporation Law, § 5; Const. U.S. Amend.14; Const. U.S. art.1, § 10.")*

76.    *"Stockholder's interest in corporation as holder of noncallable preferred stock is vested interest which may not be divested without stockholder's assent, and not a mere defeasible interest subject to be extinguished by holders of record of two-thirds (now majority) of outstanding shares."*

77.    *"Statutory remedy of appraisal of dissenting stockholder's stock...does not apply where... vested property right is destroyed by changing noncallable stock into callable stock by vote of two-thirds of stockholders."*

### No "Res Judicata"

78.    Plaintiffs' 1992 *"liquidation preference"* cause of action is not the same as the year 2003-

2007 Breach of Contract of the mandatory redemption provision, for in 1992 there could not had been a breach of something that has not occurred yet, set to happen 12-16 years into the future, and the *"Exclusive Remedy"* of appraisal per NY BCL § 906(b)(3) and § 514(a)(b) is not *"Exclusive"* nor mandatory as shown above, for it cannot destroy redemption rights or *vested property rights* (*Weckler v. Valley City, and Breslav v. New York & Queens Electric Light & Power Co, supra*).

79.    In short, the 9th Circuit and the U.S. District Court cases in 1994 and in 1999 were decided on the basis of an *appraisal remedy* for stock, and could not have been decided on the basis of breach of a redemption contract which would not accrue until 2003-2007.

## Corporate Liability per NY BCL § 906(b)(2)(3)

80.    The NY BCL § 906 (b)(3) states that:

*"The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. **No liability or obligation due or to become due**, claim or demand for any cause existing against any such corporation, or any member, officer or director thereof, **shall be released or impaired by such merger or consolidation.**"*

81.    According to HBJ, the 12% Preferred was a liability becoming due on June 30, 2003 thru June 30, 2007, and per NY BCL *"no liability or obligation due or to become due, ... shall be released or impaired by such merger or consolidation"*, neither in 1991 by the merger of HBJ and GCC, nor in 2001 by the merger of Harcourt General and Reed Elsevier.

82.    In *Fox v. MGM Grand,* the appellate court affirmed dismissal on the basis that the debenture holder had not suffered damage at the time of filing suit, i.e., the loan had not ripened to maturity for payment. *Fox v. MGM Grand Hotels, Inc. (1982) 137 Cal.App.3d 524, 525,* rehearing denied.

83.    A surviving corporation in a merger succeeds to all the rights and property of the disappearing corporation and is subject to all its debts and liabilities just the same as if those debts were originally incurred by the surviving corporation. *Maudlin v. Pacific Decision Sciences Corporation* (2006) 137 Cal.App. 4th 1001, 1016.

84.    Here, the 1991 merger provided that HBJ will continue as the Surviving Corporation, hence, the liability for its debts would continue under the newly formed Harcourt General, Inc.

85.    The 1991 Merger Prospectus provided that upon winding up of the HBJ, the 12% Preferred would have a liquidation preference plus accrued and unpaid dividends, mandating payment in full in 2003-2007 (Merger Prospectus, p.134).

86.    The 2001 merger with the Reed Elsevier provided that he Harcourt General will become a subsidiary of Reed Elsevier which will assume Harcourt's debts.

87.    In summary, then, Plaintiff's remedy as a note holder is for breach of contract, only when he has incurred damages as a result of a breach of that agreement.

88.    Here, the mandatory redemption of the 12% Preferred was to begin at maturity on 06/30/2003 thru 06/30/2007. There has been no redemption payment made to the Plaintiff either by HBJ, Harcourt General, Inc., nor Reed Elsevier, Inc.

### Anticipatory Repudiation

89.    There is no reference in any of the merger prospectus documents, including the restated merger of 8/24/91, and amended merger of 10/18/91, or in Andersen and Company Notes to financial statements of 6/30/91, that HBJ has made a stated repudiation of its contractual obligation to pay cumulative dividends and redeem the 12% Preferred in 2003-2007.

90.    Even assuming that there was such a repudiation in 1991, HBJ's repudiation of its contractual obligations would be anticipatory to the 6/30/2003 - 6/30/2007 redemption. Because the anticipatory breach has just occurred on 06/30/03 thru 06/30/07, the injured party may wait until the time for performance to file his suit. *Brewer v. Simpson* (1960) 53 Cal.2d 567, 593.

91.    Therefore, the Plaintiff has a valid breach of contract claim against HBJ, whose debts and liabilities were assumed by the Harcourt General in the merger of 1991, and which debts and liabilities were subsequently assumed by Reed Elsevier in the merger of 2001. HBJ and its successors have been given the opportunity to amicably redeem the 12% Preferred in 1991, 2004, 2005 and 2007. The limitations period, then, does not accrue until the time when there is an actual breach, which is now, and not in 1991.

### HBJ's 1996 Confidential Settlement Offer of $15,000

92.    In 1996 HBJ made a confidential settlement offer in the amount of $15,000, which Plaintiffs declined as inadequate, because of their original investment of $20,000, the HBJ's *"liquidation preference"* valuation *"at any time"* of $13.50/share, the HBJ's mandatory 2003-

2007 redemption at $13.50/share plus 12%/year accumulated dividends, and because of investment returns in major US corporations. For example $20,000 invested on 10/09/89 in the Intel Corp. would have yielded on 12/23/96 $315,000 instead of $15,000, on 8/01/00, $1,445,000, and on 7/09/07, $517,000.

## DAMAGES

93.     On 16 July 2007 Defendants informed that, *"Reed Elsevier is pleased to announce today that it has entered into a definitive agreement to sell its Harcourt US Schools Education business to Houghton Mifflin Riverdeep Group for a consideration of $4.0 billion, with $3.7 billion payable in cash and $0.3 billion payable in common stock of Houghton Mifflin Riverdeep Group. "*, and on 28 November 2007 that, *"The aggregate net proceeds of the sale of the entire Harcourt Education division of approximately $4.0 billion will be returned to shareholders by way of special dividend in the equalisation ratio followed by a corresponding consolidation of the share capitals of Reed Elsevier PLC and Reed Elsevier NV. "*

94.     Therefore, the Defendants who are in the process of selling parts of the former HBJ for $4.0 billion, definitely are financially able to redeem their own HBJ shares according to the NY BCL § 514(a)(b), for the Plaintiff who possesses *vested property rights,* per NY BCL §§ 623(j) and 514(b) has retained the status of a claimant, and per NY BCL § 906(b)(2)(3) the Defendants have inherited Harcourt General's and the HBJ's debts and liabilities.

95.     Using a dividend calculation formula created by HBJ in 1987, which was described in paragraphs 42 and 43, supra, and assuming that the value of the 12% Preferred since 12/31/90 thru 6/30/07 has been at $13.50/share (the redemption value, and not at $0.69/share as was falsely set by the HBJ-GCC merger on 11/25/91), then as of 6/30/07, the Plaintiff's contract damages are estimated to have accrued, with compounded quarterly 12%/yr dividends, to $482,734.14, less the 1991 advance of $2,810.90, leaving the amount owed of $479,926.24.

96.     If the 12% Preferred's value was set to the last market price of $0.69/share, then the calculated damages on 6/30/07 since the last day of trading 11/25/91 on the New York Stock Exchange, would have reached an absurd astronomical magnitude of $180 million billion ($1.8x10^{17}$), confirming the fact that the 12% Preferred has always been a debt security and a liability, and that ever since its issuance (1987-2007) to prevent this absurdity it had to be valued by HBJ at all times at $13.50/share.

## FIRST CAUSE OF ACTION

### BREACH OF REDEMPTION CONTRACT

97.    Plaintiff incorporates by reference and realleges paragraphs 1 through 96 as though fully set forth herein.

98.    In-between 1989-1990, Plaintiff entered into a contract with HBJ, whereas Plaintiff agreed to purchase 5,083 shares of HBJ 12% Preferred, and HBJ agreed to redeem, on June 30, 2003, and on each June 30 thereafter through June 30, 2006, 20% of all shares of 12% Preferred then outstanding and on June 30, 2007, all remaining shares of outstanding 12% Preferred, in each case at the redemption price of $13.50 per share, plus accrued and unpaid 12% dividends, to the date of redemption.

99.    Plaintiff is informed and believes and based on such information and belief alleges that Defendants acquired the liability of this contract through their acquisition of Harcourt General Inc., who had acquired HBJ (NY BCL § 906(b)(2)(3)).

100.    Plaintiff fulfilled his obligation under the contract in that he purchased 5,083 shares of 12% Preferred, and still maintains ownership of these shares today (NY BCL §§ 623(j) and 514(b)).

101.    On June 30, 2003, Plaintiff owned 22,283.39 shares of 12% Preferred, and was entitled to 20% of the $300.825.82 under the terms of the contract. Defendants breached the contract when they did not pay Plaintiff $60,165.16 on June 30, 2003.

102.    On June 30, 2004, Plaintiff owned 25,080.16 shares of 12% Preferred, and was entitled to 20% of the $338,582.11. Defendants breached the contract when they it did not pay Plaintiff $67,716.42 on June 30, 2004.

103.    On June 30, 2005, Plaintiff owned 28,227.94 shares of 12% Preferred, and was entitled to 20% of the $381,077.15. Defendants breached the contract when they did not pay Plaintiff $76,215.43 on June 30, 2005.

104.    On June 30, 2006, Plaintiff owned 31,770.79 shares of 12% Preferred, and was entitled to 20% of the $428,905.69. Defendants breached the contract when they did not pay Plaintiff $85,781.14 on June 30, 2006.

105.    On June 30, 2007, Plaintiff owned 35,758.31 shares of 12% Preferred, and was entitled to

a full 100% payment of $482,737.14. On June 30, 2007 the Defendants breached the contract when they did not pay Plaintiff $482,737.14.

106.    As a result of Defendants' breaches, on June 30, 2007 the Plaintiff has suffered damages in the amount $482,737.14 minus the 1991 advance of $2,810.90, or $479,926.24.

## JURY DEMAND

107.    Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief in accordance with the NY BCL § 514(a)(b), § 906(b)(2)(3) and § 623(j), as follows:

      a.      For compensatory damages in the amount $479,926.24;

      b.      For prejudgment interest since 6/30/2007 at highest lawful rate;

      c.      For costs of suit, and

      d.      For such other and further relief as the court may deem just and proper.


DATED:      December 5, 2007

Respectfully submitted by,


SIGNED:      *J. Czajkowski*

              Jerry Czajkowski, Ph.D., in Pro Se
              6370 Streamview Dr
              San Diego, CA 92115
              619-287-2944

**EXHIBIT 1**

**EXHIBIT 2**

Case 1:07-cv-06871 Document 1 Filed 12/12/2007 Page 22 of 35

each Nov. 14 as follows: 1994, 104.875; 1995, 103.250; 1996, 101.625 and thereafter at 100 plus accrued interest.

SECURITY — Not secured. Ranks pari passu in right of payment with all existing and future unsubordinated indebtedness of Co. Co. or any restricted subsidiary will not incur any secured debt unless contemporaneously therewith effective provision is made to secure the senior notes equally and ratably with such secured debt for so long as such secured debt is secured by a lien.

SALE AND LEASEBACK — Co. or any restricted subsidiary will not enter into any arrangement with any person providing for the leasing by Co. or any subsidiary of any real or tangible personal property, which property has been or is to be sold or transferred by Co. or such subsidiary to such person in contemplation of such leasing, unless (i) Co. or such subsidiary would be entitled to incur debt in an amount equal to the attributable debt, and (ii)(A) Co. or such subsidiary would be entitled to create a lien on such property securing debt in an amount equal to the attributable debt with respect to such arrangement without equally and ratably securing the senior notes or (B) the net proceeds of such sale are at least equal to the fair value of such property and Co. or such subsidiary applies or causes to be applied an amount in cash equal to the net proceeds of such sale.

INDENTURE MODIFICATION — Indenture may be modified, except as provided, with consent of not less than a majority of notes outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of notes outstg., may declare principal due and payable (30 day's grace for payment of interest).

PURPOSE — Proceeds will be used to repay an equal principal amount of the term loan under the bank agreement.

OFFERED — ($500,000,000) at 100 plus accrued interest (proceeds to Co., 97.25) on Nov. 17, 1988 thru The First Boston Corp. and associates.

**2. Harcourt Brace Jovanovich, Inc. senior subordinated debenture 13⅞s, due 1999:**

**Rating — B2**

AUTH — $500,000,000; outstg., December 31, 1988, $500,000,000.

DATED — Sept. 1, 1987. DUE — Sept. 15, 1999.

INTEREST — M&S 15 to holders registered M&S 1.

TRUSTEE — Security Pacific National Trust Co., NY.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1993, 103.93; 1994, 101.97 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 1997-1998, sufficient to redeem $165,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 66% of debs. prior to maturity.

SECURITY — OTHER PROVISIONS — Same as subord. pay-in-kind debs. 14¼s, 2002.

OFFERED — ($500,000,000) at 100 plus accrued interest (proceeds to Co., 96.500) on Sept. 18, 1987 thru The First Boston Corp. and associates.

**3. Harcourt Brace Jovanovich, Inc. subordinated Pay-In-Kind debenture 14⅞s, due 2002:**

**Rating — B3**

OUTSTG. — $250,000,000; outstg., December 31, 1988, $299,602,418.

DATED — Sept. 1, 1987. DUE — Sept. 15, 2002.

INTEREST — M&S 15 to holders registered M&S 1.

Interest accruing prior to Sept. 15, 1992 will be paid in additional subordinated pay-in-kind debentures.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1991, 102.50; 1992, 101.25 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 2000-2001, sufficient to redeem $127,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 50% of debs. prior to maturity.

SECURITY — Not secured. Subordinated in right of payment to all senior indebtedness.

INDENTURE MODIFICATION — Indenture may be modified, except as provided, with consent of a majority of debs. outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of debs. outstg., may declare principal and payable (30 days' grace for payment of interest).

PURPOSE — Proceeds will be used for mandatory redemption of notes held by FRSC pursuant to the subordinated note purchase agreement and, to the extent of any net proceeds in excess thereof, will initially be used to reduce outstanding revolving credit borrowings under the bank agreement.

OFFERED — ($250,000,000) at 100 plus accrued interest (proceeds to Co., 96.500) on Sept. 18, 1987 thru The First Boston Corp. and associates.

**4. Harcourt Brace Jovanovich, Inc. subordinated discount debenture 14⅝s, due 2002:**

**Rating — B3**

AUTH — $507,490,000; outstg., December 31, 1988, $299,799,323.

DATED — Sept. 1, 1987. DUE — Sept. 15, 2002.

INTEREST — M&S 15 to holders registered M&S 1.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any integral multiple thereof. Transferable and exchangeable without service charge.

CALLABLE — As a whole or in part, at any time on or after Sept. 15, 1992, at the option of Co. on at least 30 but not more than 60 days' notice to each Sept. 14 as follows: 1993, 102.00; 1994, 102.50 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Annually Sept. 15, 2000-2001, sufficient to redeem $127,000,000 principal amount of debs., plus similar optional payments. Sinking fund is designed to retire 50% of debs. prior to maturity.

SECURITY — OTHER PROVISIONS — Same as subord. pay-in-kind debs. 14¼s, due 2002.

OFFERED — ($507,490,000) at 49.262 plus accrued interest (proceeds to Co., 47.538) on Sept. 18, 1987 thru The First Boston Corp. and associates.

**5. Harcourt Brace Jovanovich, Inc. subordinated debentures 14s, due 2004**

**Rating — B3**

AUTH. — $200,000,000; outstg., December 31, 1988, $200,000,000.

DATED — Nov. 15, 1988. DUE — Nov. 15, 2004.

INTEREST — M&N 15 to holders registered M&N 1.

TRUSTEE — Bankers Trust Co.

DENOMINATION — Fully registered, $1,000 or any multiple thereof. Transferable and exchangeable.

CALLABLE — As a whole or in part at any time on or after Nov. 15, 1993, at the option of Co, on at least 30 but not more than 60 days' notice to each Nov. 14 as follows: 1994, 105.34; 1995, 103.56; 1996, 101.78 and thereafter at 100 plus accrued interest. Also callable for sinking fund (which see) at 100.

SINKING FUND — Subject to a mandatory sinking fund payment of $100,000,000 on Nov. 15, 2003 calculated to retire 50% of the debs. prior to maturity.

SECURITY — Not secured. Subordinated to all senior indebtedness of Co.

INDENTURE MODIFICATION — Indenture may be modified, except as provided, with consent of not less than a majority of debs. outstg.

RIGHTS ON DEFAULT — Trustee, or 25% of debs. outstg., may declare principal due and payable (30 days' grace for payment of interest).

PURPOSE — Proceeds will be used to repay an equal principal amount of the term loan under the bank agreement.

OFFERED — ($200,000,000) at 100 plus accrued interest (proceeds to Co., 96.50) on Nov. 17, 1988 thru First Boston Corp. and associates.

**6. Harcourt Brace Jovanovich, Inc. convertible subordinated notes 8¼%, due 1999**

AUTH. — $53,640,000; outstg. Dec. 31, 1988, $53,640,000.

DATED — Oct. 5, 1988. DUE — Dec. 31, 1999.

INTEREST — J&D 31.

CALLABLE — As a whole, but not in part, subject to certain conditions, at the option of the Co. at anytime on or after Jan. 1, 1991, on at least 10 but not more than 60 days' notice as follows:

| 1991 | 180.85 | 1992 | 225.28 | 1993 | 283.15 |
| 1994 | 109.75 | 1995 | 107.80 | 1996 | 105.85 |
| 1997 | 103.90 | 1998 | 101.95 |

and thereafter at 100 plus accrued interest.

CONVERTIBLE — Into common at any time at a price of $11.75 per share, subject to adjustment.

SINKING FUND — None required.

SECURITY — Unsecured.

**7. Other Long Term Debt:**

Outstanding Dec. 31, 1988, $1,036,376,701 comprising:

(1) $1,015,823,500, borrowings under or supported by a credit agreement with an average interest rate during 1988 of 10.24%.

(2) $9,834,188 5.5%-9% capitalized lease obligations, payments due periodically to January 2000.

(3) $10,719,013 other long-term debt, with interest rates ranging from 8¼% to 13.5%.

Among other matters, the Company's senior debt agreements specify quarterly requirements relating to working capital, cash flow to long-term debt, fixed charge coverage and minimum total capitalization as well as limitations on capital expenditures, lease obligations, and restricted payments. Co. obligations under the senior debt agreements are secured by substantially all the assets of HBJ and its subsidiaries. Total dividends on Co. 12% preferred stock for the year ending December 31, 1988 were paid through issuance of 5,339,830 shares of additional 12% preferred stock and cash payments of approximately $104,000 in lieu of fractional shares.

## CAPITAL STOCK

**1. Harcourt Brace Jovanovich, Inc. 12% preferred, par $1.**

AUTH — 85,000,000 shares; outstg., Dec. 31, 1988, 47,949,115 shares; par $1.

DIVIDEND RIGHTS — Cumulative dividends are payable quarterly on these shares from the issuance date, July 27, 1987, at the rate of 12% of their liquidation preference per year. Through June 30, 1993, dividends will be paid in additional shares of 12% Preferred Stock.

DIVIDENDS PAID —

1987-88.................⑪

⑪Paid in stock equiv. to $0.405.

CALLABLE — Co. is required to redeem, in full in level increments over 5 years commencing June 30, 2003.

TRANSFER AGENT & REGISTRAR — Sun Bank, N.A.

LISTED — On NYSE (Symbol:HBJ Pr).

ISSUED — In July 1987 as a special dividend to common stockholders.

**2. Harcourt Brace Jovanovich, Inc. common; par $1:**

AUTHORIZED — 200,000,000 shares; outstanding, Dec. 31, 1988, 72,725,690 shares; reserved for options, 3,000,000 shares; reserved for issuance upon conversion of Convertible Subordinated Notes, 4,565,106 shares; par $1.

$1 par shs. split 2-for-1, May 7, 1981; and 3-for-1 June 23, 1986.

DIVIDENDS —

| 1960.............$0.12½ | 1961-63......$0.50 | 1964.................$0.70 |
| 1965.............0.80 | 1966...........0.95 | 1967-73.........1.00 |
| 1974.............1.09 | 1975...........1.20 | 1976.................1.32 |
| 1977-79........1.44 | ⑪1980.........1.56 | 1981.................0.40 |

On $1 par shs. after 2-for-1 split:

| 1981...............0.75 | 1982-85.........1.00 | 1986.................0.55 |

On $1 par shs. after 3-for-1 stock split:

| 1986...............0.38 | 1987 ............⑪⑪0.10 | 1988................... Nil |

⑪⑪Also paid 1 sh. of 12% pfd. stk. for each com. sh. held.

VOTING RIGHTS — Has one vote per share.

OFFERED — (493,425 shares) at $23.50 a share on Aug. 17, 1960 by White, Weld & Co., Inc., New York, and associates. Offering did not represent company financing.

(101,398 shares) at $38.50 a share on May 19, 1961 by White Weld & Co., Inc., New York and associates. Offering did not represent company financing.

(4,290,000 shs.) at $33 per sh. on June 25, 1986. Of the total, 3,290,000 shs. were offered in the U.S.A. thru First Boston Corp. and associates, and 1,000,000 shs. sold internationally by Credit Suisse First Boston Ltd. and associates. Proceeds of 2,597,186 shs., for Co. account to finance acquisitions and reduce short-term debt.

(10,000,000 shs.) at $9.50 per sh. on Nov. 4, 1988. Of the total, 7,000,000 shs. were offered in the U.S.A. and Canada thru First Boston Corp., and 3,000,000 shs. were offered internationally thru Credit Suisse First Boston Ltd. and associates.

PROCEEDS — were used to reduce long-term debt.

TRANSFER AGENT, REGISTRAR & DIVIDEND DISBURSING AGENT — Sun Bank, N.A., Orlando, Florida.

LISTED — On NYSE (Symbol - HBJ); unlisted trading on Boston Stock Exchange.

**Preferred Retired:** All shares of exchangeable escalating rate preferred were retired in Oct. - Nov. 1988.

**EXHIBIT 3**

1  LATHAM & WATKINS
    Kenneth M. Fitzgerald, State Bar #142505
2    Jared G. Flinn, State Bar #190743
   701 B Street, Suite 2100
3  San Diego, California 92101-8197
   Telephone: (619) 236-1234
4  Facsimile: (619) 696-7419

5  Attorneys for Defendants

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  JERRY CZAJKOWSKI, LONIA          CASE NO. 92-431 B (AJB)
    CZAJKOWSKI et al.,
12                                   DECLARATION OF PAUL PFLEIDERER,
              Plaintiffs,            PH.D. IN SUPPORT OF DEFENDANTS'
13                                   OPPOSITION TO PLAINTIFFS' MOTION FOR
        v.                           RECONSIDERATION
14
    PETER JOVANOVICH and HARCOURT
15  BRACE JOVANOVICH, INC.,          Date:      April 20, 1998
                                     Time:      10:30 a.m.
16            Defendants.            Courtroom: 2
17                                   Hon. Rudi M. Brewster
18

19

20

21

22

23

24

25

26

27

28

1       I, Paul Pfleiderer, Ph.D. declare as follows:

2       1. I am currently the William F. Sharpe Professor of Financial Economics at

3    the Stanford University School of Business. I have been retained by defendants in this action to

4    render an opinion regarding the fair value of plaintiffs' preferred shares in Harcourt Brace

5    Jovanovich, Inc. ("HBJ"), as of the date of HBJ's merger with General Cinema Corporation

6    ("GCC").

7       2. In connection with this matter, I reviewed and analyzed the financial

8    condition of HBJ between 1987 and the date of the HBJ/GCC merger. I also reviewed and

9    analyzed the HBJ/GCC merger transaction and its effects on HBJ, and on the rights of HBJ's

10   stockholders to receive payment for their shares.

11      3. A true and correct copy of the report I generated for this matter is attached

12   hereto as Exhibit A. My report includes: a) my opinion that the price offered to the holders of

13   the preferred stock of HBJ, $0.69125 per share, was a fair price; and b) all of the documentation I

14   reviewed in formulating my opinion.

15      4. Specifically, I based my opinion in part on the entire Harcourt Brace

16   Jovanovich, Inc., General Cinema Corporation Joint Proxy Statement/Prospectus dated October

17   25, 1991 ("Proxy Statement"). My review of the Proxy Statement included pages 132 and 133

18   thereto, which were inadvertently omitted from the exhibits to my Declaration in Support of

19   Defendants' Motion For Summary Judgment due to a copying error.

20      5. These pages of the Proxy Statement had no bearing on my opinion that the

21   price offered to the holders of the preferred stock of HBJ, $.069125 per share, was a fair price.

22   These pages state that,

23       HBJ may, at its option, redeem shares of HBJ Preferred Stock in
    whole or in part, or from time to time in part, at a redemption
24       price equal to the $13.50 per share liquidation preference plus
    accrued and unpaid dividends, if any, to the date fixed for
25       redemption. HBJ is required to redeem, on June 30, 2003 and on
    each June 30 thereafter through June 30, 2006, 20% of all shares of
26       HBJ Preferred Stock then outstanding and on June 30, 2007 all
    remaining shares of outstanding HBJ Preferred Stock, in each case
27       at the redemption price of $13.50 per share, plus accrued and
    unpaid dividends, if any, to the date of redemption, except to the
28

1  extent HBJ is prevented from doing so under the provisions of the
2  Bank Agreement, the Indentures, or certain other instruments.

3  Proxy Statement at 133.

4        6.    I considered this clause, along with the remainder of the Proxy Statement,

5  in formulating my opinion in this matter.  However, this clause does not change my opinion

6  regarding the value of the HBJ preferred stock because the clause was never triggered.

7  Specifically, for this clause to have any effect: a) HBJ must invoke its option to redeem the

8  preferred shares; or b) HBJ preferred shares must be outstanding in the year 2003.  Because

9  neither of these events took place, this clause has no bearing on my opinion that the price offered

10  to the holders of the preferred stock of HBJ was a fair price.

11        I declare under penalty of perjury under the laws of the United States that the

12  foregoing is true and correct.

13        Executed on the _3_ day of April, 1998 at Palo Alto, California.

14
15  PAUL PFLEIDERER, PH.D.

16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 4**


Westlaw.

28 F.3d 105 (Table)                                                                Page 1

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))

**c**

NOTICE: THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA9 Rule 36-3 for
rules regarding the citation of unpublished
opinions.)

United States Court of Appeals, Ninth Circuit.
Jerry **CZAJKOWSKI**; Lonia **Czajkowski**,
Plaintiffs-Appellants,
v.
Peter JOVANOVICH; Harcourt Brace,
Jovanovich, Inc., Defendants-Appellees.
No. 92-55787.

Argued and Submitted May 3, 1994.
Decided June 8, 1994.

Appeal from the United States District Court for
the Southern District of California, No.
CV92-431-JSR (HRM); John S. Rhoades, District
Judge, Presiding.

S.D.Cal.

VACATED AND REMANDED.

Before: BROWNING and FLETCHER, Circuit
Judges, and FITZGERALD, [FN*] Senior District
Judge.

MEMORANDUM [FN**]

**1 Jerry and Lonia Czajkowski appeal pro se the
district court's order dismissing their action
pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state
a claim upon which relief may be granted. We
have jurisdiction pursuant to 28 U.S.C. § 1291 and
we vacate and remand.

I.

We review de novo the district court's dismissal of
the Czajkowski's action. *See Blake v. Dierdorff*,
856 F.2d 1365, 1368 (9th Cir.1988). We accept all
material allegations in the complaint as true and
resolve all doubts in favor of the plaintiff. *See id.*
"Dismissal is appropriate only if the plaintiff 'can
prove no set of facts in support of his claim which
would entitle him to relief.' " *Klarfeld v. United
States*, 944 F.2d 583, 585 (9th Cir.1991) (per
curiam) (quoting *Gibson v. United States*, 781 F.2d
1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S.
1054 (1987)). When a complaint is dismissed for
failure to state a claim, the court should grant the
plaintiff leave to amend " 'unless the court
determines that the allegation of other facts
consistent with the challenged pleading could not
possibly cure the deficiency.' " *Id.* (quoting
*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393, 1401 (9th Cir.1986)).

A.

There is no dispute that the issues presented to the
district court are governed by New York law since
Harcourt was a New York corporation. *See Rogers
v. Guaranty Trust Co.*, 288 U.S. 123, 130 (1933);
*Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527
(9th Cir.1985) (stating that "[c]laims involving the
'internal affairs' of corporations ... are subject to the
laws of the state of incorporation").

Under New York law, "[s]harcholders who do not
assent to [a] merger have the right to receive
payment for the 'fair value' of their shares.... The
remedy available to those who have perfected their
status as dissenting shareholders ... is to enforce this
right through an appraisal proceeding." [FN1]
*Cawley v. SCM Corp.*, 530 N.E.2d 1264, 1266
(N.Y.1988); *see* N.Y.Bus.Corp.Law § 623
(McKinney 1986); *Burke v. Jacoby*, 981 F.2d
1372, 1380 (2d Cir.1992), *cert. denied*, 113 S.Ct.
2338 (1993). Furthermore, under section 623(e), a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

dissenting shareholder "cease[s] to have any of the rights of a shareholder except the right to be paid the fair value of his shares and any other rights under ... section [623]." N.Y.Bus.Corp.Law § 623(e).

Section 623 also provides:

> The enforcement by a shareholder of his right to receive payment for his shares in the manner provided [in section 623] shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled ... except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him.

*Id.* § 623(k). As interpreted by New York courts, section 623(k) makes an appraisal proceeding a dissenting shareholder's exclusive remedy except in a narrow class of cases. *See Burke,* 981 F.2d at 1380; *Cawley,* 530 N.E.2d at 1267.

**\*\*2** The exception to the general rule requires the plaintiff to bring an "appropriate action" for equitable relief for unlawful or fraudulent corporate action. *Cawley,* 530 N.E.2d at 1267. Equitable relief must be the primary relief sought. *Walter J. Schloss Assocs. v. Arkwin Indus.,* 460 N.E.2d 1090, 1091 (N.Y.1984) (adopting dissenting opinion of Mangano, J., at Appellate Division as Court of Appeals opinion). "Money damages are only available, if at all, as ancillary or incidental to such equitable relief." *Id.*

Here, it is undisputed that the Czajkowskis were dissenting shareholders in the Harcourt Brace Jovanovich, Inc. ("HBJ") merger with General Cinema Corporation ("GCC"). Accordingly, the district court correctly determined that the Czajkowskis' exclusive remedy was an appraisal proceeding. *See,* N.Y.Bus.Corp.Law § 623(k). The Czajkowskis' attempt to avoid this result in two ways.

First, the Czajkowskis contend that the merger was in fact a liquidation of HBJ and, therefore, that they

were entitled to payment of a $13.50 per share liquidation preference. This contention lacks merit.

New York courts have not decided whether a "merger" is the equivalent of a "liquidation" requiring payment of the liquidation preference to preferred shareholders. However, in *Rauch v. RCA Corp.,* 861 F.2d 29 (2nd Cir.1988), the Second Circuit decided the issue under Delaware law. In *Rauch* the plaintiff, who owned preferred shares of RCA, was offered $40 a share pursuant to a merger agreement in which RCA was to be merged with a subsidiary of General Electric. She claimed that the merger constituted a "liquidation or dissolution or winding up of RCA" and that she was therefore entitled to $100 per share--the amount specified as the redemption or liquidation preference value of her preferred shares. The court rejected this argument. Quoting an earlier case, the court held it was

> settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares.

*Id.* at 32 (quoting *Rothschild Int'l Corp. v. Liggett Group,* 474 A.2d 133, 136-37 (Del.1984)). In both *Rauch* and *Rothschild,* the courts held that owners of preferred stock were not entitled to the liquidation or redemption preference specified in their stock agreements (which was in both cases $100), because the merger of the corporations in which they owned stock did not constitute the liquidation of the corporations. *E.g., Rothschild,* 474 A.2d at 136 ("there was no 'liquidation' of Liggett within the well-defined meaning of that term ... [because] the reverse cash-out merger of Liggett did not accomplish a 'liquidation' of Liggett's assets."). The *Rauch* court noted that plaintiff could have sought an appraisal proceeding (Delaware Business Code has a provision similar to N.Y.Bus.Corp.Law § 623), but did not. *Rauch,* 861 F.2d at 32.

**\*\*3** Since the decisions in *Rauch* and *Rothschild*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



# Harcourt Brace Jovanovich, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

12%
PREFERRED STOCK
PAR VALUE
$1.00 PER SHARE

CUSIP 411631 20 3
SEE REVERSE FOR CERTAIN DEFINITIONS

12%
PREFERRED STOCK
PAR VALUE
$1.00 PER SHARE

THIS CERTIFICATE IS
TRANSFERABLE IN THE CITIES OF
NEW YORK, N.Y. AND
ORLANDO

PF 000

This Certifies that

FULLY PAID AND NON-ASSESSABLE SHARES OF THE 12% PREFERRED STOCK, PAR VALUE $1.00 PER SHARE

DATED: NOV 21, 1991

COUNTERSIGNED AND REGISTERED
SUN BANK, N.A.
(ORLANDO, FLORIDA)
TRANSFER AGENT
AND REGISTRAR

AUTHORIZED SIGNATURE

Page 3

28 F.3d 105 (Table)

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

appear to turn upon interpretation of the contract term "liquidation" as included in the preferred share agreements, rather than on any specific or unique provision in Delaware law, there is little reason to suspect that New York courts would follow a different course.

Second, the Czajkowskis contend that their action falls within the "appropriate action" exception because they sought equitable relief for fraud. This contention also lacks merit.

To fall within the "appropriate action" exception, "[t]here must be a request for equitable relief which, in fact, must be the primary relief sought." *Walter J. Schloss Assocs.*, 460 N.E.2d at 1091. Even if equitable claims and claims for damages are brought in the alternative and are equally weighted, the claim is outside the "appropriate action" exception. *Staskus v. The Rawplug Co., Inc.*, 1993 WL 212736 (S.D.N.Y. June 11, 1993) (holding appraisal is exclusive remedy where plaintiff sought both appraisal and rescission of merger, and expressed no preference for one or the other). Nor is the plaintiff permitted to merely request damages in another form. *Burke*, 981 F.2d at 1380. Here, the Czajkowskis' action is in essence a claim that they were not paid enough for their shares, it is a claim for damages, and therefore is foreclosed by *Schloss* unless it is recast as a claim for appraisal.

**B.**

The district court held that it lacked jurisdiction to hear an action seeking appraisal under the New York statute that required the suit to be brought in the New York courts. We conclude, however, that the New York legislature may not divest the district court of diversity jurisdiction. The district court can appraise the shares applying the New York law. In a case repeatedly cited by appellants, the Eighth Circuit held that the venue provision of a New Jersey appraisal statute did not divest a federal court of diversity jurisdiction over an action for appraisal under New Jersey law. *Mullen v. Academy Life Ins. Co.*, 705 F.2d 971, 975 (8th Cir.1983). A federal district court reached the same conclusion with regard to the New York

appraisal statute at issue. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F.Supp. 380, 388 (S.D.N.Y.1981), *aff'd*, 675 F.2d 456 (2d Cir.1982). These cases apply a longstanding Supreme Court rule:

> Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

*Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1871); *accord Duchek v. Jacobi*, 646 F.2d 415 (9th Cir.1981) (rejecting argument that federal court lacked jurisdiction to enforce its judgment where controlling state statute required action to proceed in particular state court).

\*\*4 The Czajkowskis make substantial allegations that the merger price of $0.75 per share may not have been the "fair value" to which the Czajkowskis were entitled under N.Y.Bus.Corp.Law § 623. While the Czajkowskis owned the stock, it allegedly traded for as much as $12.25 per share. Appellants also make various allegations of fraud and breach of fiduciary duty which can be considered in conducting an appraisal under New York law. *See Walter J. Schloss Assocs. v. Arkwin Indus., Inc.*, 455 N.Y.S.2d 844, 852 (N.Y.App.Div.1982) (Mangano, J., dissenting), *rev'd for reasons stated in dissenting opinion*, 460 N.E.2d 1090 (N.Y.1984).

We remand to allow the Czajkowskis leave to amend their complaint to seek appraisal under the New York Statute.

VACATED and REMANDED.

> FN\* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

> FN\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3. The parties are familiar with the facts and we will not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 F.3d 105 (Table)                                                   Page 4

28 F.3d 105 (Table), 1994 WL 247089 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 28 F.3d 105, 1994 WL 247089 (9th Cir.(Cal.)))**

    repeat them.

    FN1. Appraisal is the exclusive remedy for
    common and preferred voting shares.
    N.Y.Bus.Corp.Law § 623(k); *In re*
    *Harwitz,* 80 N.Y.S.2d 570
    (N.Y.Sup.Ct.1948). Because the
    Czajkowskis' preferred shares were voting
    shares, their remedy is appraisal.

28 F.3d 105 (Table), 1994 WL 247089 (9th
Cir.(Cal.)), Unpublished Disposition

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

176 F.3d 482 (Table)

Page 1

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 176 F.3d 482, 1999 WL 282472 (9th Cir.(Cal.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
Jerry CZAJOWSKI; Lonia **Czajkowski**,
Plaintiffs-Appellants,
v.
Peter JOVANOVICH; Harcourt Brace Jovanovich,
Inc., Defendants-Appellees.
**No. 98-55904.**
**D.C. No. CV-92-00431-RMB.**

Submitted April 12, 1999 [FN2].

FN2. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). Accordingly, we deny appellants' request for oral argument.

Decided April 15, 1999.

Appeal from the United States District Court for the Southern District of California Rudi M. Brewster, District Judge, Presiding.

Before BRUNETTI, LEAVY, and THOMAS, Circuit Judges.

MEMORANDUM [FN1]

FN1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

**1 Jerry Czajkowski and Lonia Czajkowski ("plaintiffs"), former preferred shareholders of Harcourt Brace Jovanovich, Inc. ("HBJ"), appeal pro se the district court's grant of summary judgment for defendants in plaintiffs' diversity action alleging that HBJ breached a liquidation preference clause by failing to redeem plaintiffs' shares of HBJ preferred stock at the purported guaranteed redemption price of $13.50 per share when HBJ merged with General Cinema Corporation in 1991. Plaintiffs also appeal the district court's April 24, 1998 order denying their motion for reconsideration. We dismiss in part, and affirm in part.

We lack jurisdiction to review the district court's February 9, 1998 order granting summary judgment to defendants because plaintiffs did not file their notice of appeal until May 4, 1998, nearly three months after judgment was entered on February 10, 1998. *See* Fed. R.App. P. 4(a)(1)(A); *Atchison, Topeka & Santa Fe Ry. Co. v. California State Bd. of Equalization,* 102 F.3d 425, 427 (9th Cir.1996). Although plaintiffs sought reconsideration of the district court's summary judgment order, they did not file the motion until March 12, 1998, well beyond the ten-day period that would have tolled the time to file their notice of appeal from the summary judgment order. *See* Fed. R.App. P. 4(a)(1)(A). Accordingly, we dismiss this portion of plaintiffs' appeal for lack of appellate jurisdiction. *See California State Bd. of Equalization,* 102 F.3d at 427.

We do, however, have jurisdiction to review the district court's denial of plaintiffs' motion for reconsideration. We conclude that the district court did not abuse its discretion because plaintiffs essentially only sought to relitigate issues that were previously rejected by this court in *Czajkowski v. Jovanovich,* No. 92-55787, 1992 WL 247089, at *1-4 (9th Cir. June 8, 1994), and plaintiffs have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

176 F.3d 482 (Table)

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.))
**Unpublished Disposition**

**(Cite as: 176 F.3d 482, 1999 WL 282472 (9th Cir.(Cal.)))**

failed to demonstrate a sufficient basis for relief under either Fed.R.Civ.P. 59(e) or 60(b). *See Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1441-42 (9th Cir.1991).

We reject plaintiffs' remaining contentions as being without merit.

We deny Appellees' request for judicial notice.

Appellees are entitled to recover their costs on appeal.

DISMISSED in part, and AFFIRMED in part.

·Jerry CZAJKOWSKI, Lonia Czajkowski, et al., Plaintiffs/Appellants, v. PETER JOVANOVICH, INC. and Harcourt Brace Jovanovich, Inc., Defendants/Appellees., 1998 WL 34106949 (Appellate Brief) (C.A.9 October 9, 1998), Defendants/Appellees Harcourt Brace Jovanovich, Inc. and Peter Jovanovich's Answering Brief

176 F.3d 482 (Table), 1999 WL 282472 (9th Cir.(Cal.)), Unpublished Disposition

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2